TROWEL TRADES EMPLOYEES HEALTH AND WELFARE TRUST FUND OF DADE COUNTY et al., Plaintiffs-Appellees,

v.

EDWARD L. NEZELEK, INC., a Florida Corporation, Defendant-Appellant.

No. 79–3528.

United States Court of Appeals, Fifth Circuit. Unit B

May 18, 1981.

John Downing, Richard L. Polin, Ft. Lauderdale, Fla., Bowman S. Garrett, Jr., Atlanta, Ga., for defendant-appellant.

Kaplan, Dorsey, Sicking & Hessen, Steve Bloom, Howard S. Susskind, Robert A. Sugarman, Miami, Fla., for plaintiffs-appellees.

Before GODBOLD, Chief Judge, MORGAN and HENDERSON, Circuit Judges.

GODBOLD, Chief Judge:

Edward L. Nezelek, Inc. (Nezelek) appeals from a district court judgment, 482 F.Supp. 846, awarding $8,900 in delinquent fringe benefit contributions plus interest, costs, attorneys' fees and accountants' fees to various union trust funds (Funds). We affirm.

Nezelek, a general contractor, signed collective bargaining agreements with Local 7 of the International Union of Bricklayers and Allied Craftsmen. The agreements required Nezelek to make fringe benefit contributions to appellee Funds for work performed under the agreements. Article XIV of those agreements also contained a subcontracting clause that required Nezelek to subcontract only to employers who had signed the agreements.[1] Nezelek contracted with Environmental Concrete Corporation for it to perform subcontracting work on the Fleming Key Animal Control Center Project. Environmental Concrete was not a signatory to the collective bargaining agreements, and neither Nezelek nor Environmental Concrete made fringe benefit contributions to the Funds for work performed on the project.

The Funds filed suit, alleging that Nezelek had breached the agreements by failing to make fringe benefit contributions for the work performed on the Fleming Key Project. After a non-jury trial the district court concluded that Nezelek breached the agreements by failing to subcontract work to a signatory employer. It further held that Nezelek must pay fringe benefit contributions for work performed on the project.

At trial Nezelek contended that the subcontracting clause violated Florida's right-to-work law, 25A Fla.Stat.Ann.Const. Art. 1, § 6 (West 1970), but the district court did not address this issue when it entered judgment following trial. Nezelek moved for a new trial on this issue, and the motion was granted. After receiving legal memoranda on the right-to-work issue but without hearing additional evidence, the district court concluded that the subcontracting clause did not violate the Florida right-to-work provision and again entered judgment for the Funds. Nezelek's subsequent motion for rehearing was denied.

## I. Timeliness of the Appeal

The Funds contend that we are without jurisdiction because Nezelek's notice of appeal was untimely under F.R.A.P. 4(a).[2] The district court's first judgment,

---

1. The subcontracting clause provides:

   All work coming under the trade jurisdiction of the Union as defined in Article II of this Agreement which is to be performed on the jobsite and which is part of the Employer's contract or which the Employer is otherwise obligated to perform must be assigned to and performed on the jobsite by employees of an employer who is a signatory to and abides by this Agreement and must be performed under the terms of this Agreement.

2. F.R.A.P. 4(a) provides in part:

   (1) In a civil case in which an appeal is permitted by law as of right from a district court to a court of appeals the notice of appeal required by Rule 3 shall be filed with the clerk of the district court within 30 days after the date of entry of the judgment or order appealed from; but if the United States

or an officer or agency thereof is a party, the notice of appeal may be filed by any party within 60 days after such entry . . . .

. . . .

(4) If a timely motion under the Federal Rules of Civil Procedure is filed in the district court by any party: (i) for judgment under Rule 50(b); (ii) under Rule 52(b) to amend or make additional findings of fact, whether or not an alteration of the judgment would be required if the motion is granted; (iii) under Rule 59 to alter or amend the judgment; or (iv) under Rule 59 for a new trial, the time for appeal for all parties shall run from the entry of the order denying a new trial or granting or denying any other such motion. A notice of appeal filed before the disposition of any of the above motions shall have no effect. A new notice of appeal must be filed within the prescribed time measured from the entry of

which did not address the right-to-work issue even though it had been raised at trial, was entered January 31, 1979. Nezelek timely served a motion for a new trial on this issue on February 8. The district court granted the new trial motion on April 6 and, after receiving legal memoranda from both parties, entered a second judgment on September 10, 1979. Nezelek moved for rehearing four days later, and this motion was denied on September 25. Nezelek filed a notice of appeal on October 17, 1979.

The Funds correctly point out that the October 17 notice of appeal was not timely as to the September 10 final judgment. They then argue that Nezelek's subsequent motion for rehearing did not toll the time for filing an appeal because Rule 4(a) only affords an appellant one opportunity to ask the district court to re-examine its judgment and Nezelek previously took that opportunity when it filed the motion for new trial after the first judgment.

We find that Nezelek's motion for rehearing extended the time for appeal to 30 days after the district court's September 25 denial of that motion. Although we have held repeatedly that successive motions " 'of the kind enumerated in Rule 4(a)' " will not toll indefinitely the prescribed period for filing a notice of appeal, *Dixie Sand & Gravel Co. v. TVA*, 631 F.2d 73, 74 (5th Cir. 1980),

quoting *Wansor v. George Hantscho Co.*, 570 F.2d 1202, 1206 (5th Cir.), *cert. denied*, 439 U.S. 953, 99 S.Ct. 350, 58 L.Ed.2d 344 (1978), these holdings do not apply where the district court grants appellant's motion for a new trial on an issue not addressed in the original judgment and the appellant moves for reconsideration after the new trial on that issue, *see* F.R.A.P. 4(a)(4); 9 Moore's Fed.Practice ¶ 204.12[1] n.7. The district court did not render judgment based on the right-to-work issue until September 10, and Rule 4(a) allowed Nezelek one opportunity to ask the court to reconsider that judgment. Since Nezelek's notice of appeal was filed within 30 days of the district court's denial of reconsideration, the appeal is timely.[3]

## II. Right-to-Work and the Subcontracting Clause

Nezelek vigorously argues that the subcontracting clause that the Funds seek to enforce violates Florida's right-to-work provision.[4] The gist of the argument is that the clause permits the union to accomplish indirectly what Florida's right-to-work law prevents it from accomplishing directly: pressuring workers to join unions. Since the clause forces Nezelek to retain only union subcontractors presumably employing mostly union members and excludes non-

the order disposing of the motion as provided above . . . .

3. The Funds also contend that the September 10 judgment was in effect a denial of Nezelek's motion for new trial. The unstated premise of this contention is that, even though the district court captioned its April 6 order as an "order granting new trial," no new trial was held because the district court subsequently entered judgment on the right-to-work issue after receiving legal memoranda but without taking additional evidence. While it is true that a district court's characterization of its orders is not decisive in determining the nature of those orders for purposes of timely appeals, *see Cornist v. Richland Parish School Dist.*, 479 F.2d 37, 39 (5th Cir. 1973), we find the district court's characterization in this case accurate. A new trial was held on the right-to-work issue. That the district court did not hear additional testimony is not controlling, for new trials in non-jury cases often lack many of the trappings of new trials in jury cases, *see* 6A Moore's Fed.Practice ¶ 59.07. Moreover, as in

jury cases, one of the grounds for granting a new trial in non-jury cases is manifest error of law, *id.; Brown v. Wright*, 588 F.2d 708, 710 (9th Cir. 1978). We have little trouble in finding that the district judge's failure to address a potentially dispositive issue that was presented at trial constitutes a manifest error of law. Consequently, his decision to grant a new trial on that issue based upon evidence produced at the first trial was properly characterized as the grant of a new trial.

4. Article I, Section 6 of the Florida Constitution provides:

The right of persons to work shall not be denied or abridged on account of membership or non-membership in any labor union or labor organization. The right of employees, by and through a labor organization, to bargain collectively shall not be denied or abridged. Public employees shall not have the right to strike.

union subcontractors having non-union workers, it arguably has the effect of foreclosing workers from jobs based upon non-membership in a union.[5]

■■■ The Florida Constitution prohibits explicit closed, union, or agency shop provisions in collective bargaining agreements, *see Schermerhorn v. Retail Clerks,* 141 So.2d 269 (Fla.1962), *cause for reargument set,* 373 U.S. 746, 83 S.Ct. 1461, 10 L.Ed.2d 678, *affirmed,* 375 U.S. 96, 11 L.Ed.2d 179 (1963); *Local No. 234 v. Henley & Beckwith, Inc.,* 66 So.2d 818 (Fla.1953); *Local No. 519 v. Robertson,* 44 So.2d 899 (Fla. 1950). However, Nezelek's collective bargaining agreement contains no such union security clause. Nevertheless, Nezelek contends that Florida's right-to-work provision extends to provisions in collective bargaining agreements like the subcontracting clause which potentially have the same effect as the proscribed security clauses.

Assuming that Florida's right-to-work provision can be stretched as far as Nezelek suggests without running afoul of federal labor law,[6] Nezelek failed to adduce evidence that the subcontracting clause in its collective bargaining agreement had the proscribed effect. Florida courts have consistently rejected employer efforts to apply the state's right-to-work law to provisions that on their face are not union security provisions "without extensive evidence as to the actual operation of the agreement," *McCann Plumbing Co. v. Plumbing Indus-* *try Program,* 105 So.2d 26, 28 (Fla.Dist.Ct. App.1958). *See also Wall v. Bureau of Lathing & Plastering,* 117 So.2d 767 (Fla. Dist.Ct.App.1960).

Although Nezelek presents a plausible argument that the subcontracting clause could have the effect proscribed by the right-to-work law, it produced no evidence indicating that the clause did have that effect. Nezelek has not shown, for instance, that signatory subcontractors would discriminate against non-union workers.[7] Moreover, the Funds presented uncontradicted testimony that non-union workers were eligible for and did receive benefits from the trust funds.

In an attempt to shore up the evidentiary shortcomings of its argument Nezelek also asserts that *Connell Construction Co. v. Plumbers & Steamfitters,* 421 U.S. 616, 95 S.Ct. 1830, 44 L.Ed.2d 418 (1975), establishes as a matter of law that subcontracting clauses such as the one before us have the effect of excluding non-union workers from jobs. We find nothing in that opinion to support this blanket assertion. In *Connell* the Supreme Court held that the construction industry proviso in § 8(e) of the NLRA, 29 U.S.C. § 158(e), does not insulate from federal antitrust suit subcontracting agreements outside the context of a collective bargaining relationship and not limited to a particular jobsite. The Court was concerned that subcontracting clauses of this nature tend to exclude non-union subcon-

---

**5.** In addition to finding against Nezelek on this argument the district court alternatively held that Nezelek lacked standing to raise it on behalf of the employees of non-union subcontractors. Because we find Nezelek has not proved a violation of the Florida right-to-work provision, we will assume without deciding that it has standing.

**6.** It is questionable whether the limited shelter from preemption afforded state right-to-work laws by § 14(b) of the Labor Management Relations Act, 29 U.S.C. § 164(b), extends to application of those laws to provisions in collective bargaining agreements that are not explicit union security provisions but may have the effect of encouraging union membership, *see Associated General Contractors v. Otter Tail Power,* 611 F.2d 684, 692 n. 12 (8th Cir. 1979). *See also N. L. R. B. v. Houston Chapter, Associated* *General Contractors of America,* 349 F.2d 449, 453 (5th Cir. 1965), *cert. denied,* 382 U.S. 1026, 86 S.Ct. 648, 15 L.Ed.2d 540 (1966). Since we conclude that Nezelek has not proved that the subcontracting clause has the effect of a union security clause, we need not reach this issue.

**7.** Indeed, if Nezelek had abided by the agreement and retained a signatory subcontractor, that subcontractor would be prohibited by Florida law from operating a closed, union, or agency shop, *Schermerhorn; Henley & Beckwith, supra,* and by § 8(a)(3) of the National Labor Relations Act, 29 U.S.C. § 158(a)(3), from discriminating against non-union workers in hiring, *see N. L. R. B. v. H. K. Ferguson Co.,* 337 F.2d 205 (5th Cir. 1964), *cert. denied,* 380 U.S. 912, 85 S.Ct. 898, 13 L.Ed.2d 798 (1965).

tractors from the market, 421 U.S. at 623–25, 95 S.Ct. at 1835–36.

Nezelek would have us hold that because the subcontracting clause may exclude non-union subcontractors it must necessarily exclude non-union workers.[8] We decline to do so. Florida's right-to-work provision guarantees that workers may not be excluded from jobs on the basis of membership or non-membership in a union. It does not guarantee them the right to work for non-union employers. Employees of non-signatory subcontractors who are unable to work because their employer is unable to obtain subcontracts are out of work not because they are not union members but because their employer has not signed a collective bargaining agreement, see note 7, *supra.* At least in the absence of evidence that non-union workers are unable to obtain work from union subcontractors and therefore must resort to non-union subcontractors for work, Nezelek has failed to demonstrate that non-union employees' right to work is in any way restrained by the subcontracting clause at issue.

### III. Additional Evidence

Nezelek also argues that the district judge erred in refusing to hear additional testimony after granting a new trial on the right-to-work issue. The argument is undermined by Nezelek's actions during trial and its position in the motion for new trial. At trial Nezelek raised the right-to-work issue and rested on the evidence offered. In its motion for new trial Nezelek alleged that "[t]he testimony at trial together with a reading of [the subcontracting clause] of the Collective Bargaining Agreement" established a violation of Florida's right-to-work provision.[9] In its motion for rehearing after entry of the second judgment Nezelek for the first time asserted that

additional evidence was necessary to determine whether the subcontracting clause abridged the right-to-work provision.[10]

Under these circumstances we find that the district court did not abuse its discretion in deciding the right-to-work issue based on legal memoranda and without hearing additional testimony, *see Hennessy v. Schmidt,* 583 F.2d 302 (7th Cir. 1978); *Kirby v. U. S.,* 297 F.2d 446 (5th Cir. 1961). Moreover, the district court properly denied Nezelek's motion for rehearing where the motion was nothing more than an effort by an unsuccessful party to introduce more evidence when that party had "ample opportunity to produce such evidence during the initial trial," *Muhammad Temple of Islam v. City of Shreveport,* 387 F.Supp. 1129, 1137 (W.D. La.1974), *affirmed,* 517 F.2d 922 (5th Cir. 1975).

AFFIRMED.

---

**8.** We pretermit deciding whether the subcontracting clause in this case is protected by the construction industry proviso of § 8(e). Since the clause arises out of a collective bargaining agreement between Nezelek and the union *Connell* arguably does not apply and the clause is entitled to the preemptive protection of § 8(e), *see Donald Schriver, Inc. v. NLRB,* 635 F.2d 859 (D.C.Cir.1980). *But see Pacific North-*

*west Chapter, Associated Builders & Contractors, Inc. v. NLRB,* 609 F.2d 1341 (9th Cir. 1979), *rehearing en banc granted,* No. 78–3469, (9th Cir. 1980).

**9.** Record at 70.

**10.** Record at 111.